UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00180-RSE

**JAMES S.**                                                                                                                  **PLAINTIFF**

VS.

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                                                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant James. S.'s ("Claimant's") applications for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 20) and the Commissioner (DN 26) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13).

## I. Background

Claimant is in his forties, has a high school education, and lives in a mobile home with his mother. Claimant applied for supplemental security income benefits ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II on October 17, 2017. (Transcript, hereinafter "Tr." 189-95). He alleged disability beginning October 10, 2017 due to: "ischemic stroke, heart attack, teomalacia, scoliosis, osteoarthritis, mental health issues, osteomalacia, high blood pressure, high cholesterol, hypertension, diabetes insipidus, migraines, PT Dx Arthritis, not

producing testosterone, depression, anxiety, and bipolar." (Tr. 209-10). Claimant's applications were denied on initial review (Tr. 59-88) and denied again on reconsideration (Tr. 102-139).

At Claimant's request, Administrative Law Judge Robert Martin ("ALJ Martin") conducted a hearing in Nashville, Tennessee on August 16, 2019. (Tr. 37). Claimant appeared in person with his attorney. (Tr. 39). An impartial vocational expert also appeared at the hearing. (*Id.*). During the hearing, Claimant gave the following relevant testimony. Approximately fifteen years ago, Claimant worked as a CNA at a senior living facility. (Tr. 41-42). He also previously worked as a night auditor/clerk at a hotel and as a telephone operator. (Tr. 42-43). At his last job at InspiriTec, Claimant received accommodations from Vocational Rehabilitation, including an orthopedic chair, a footstool, and an arm device. (Tr. 48-49). Claimant stopped working after experiencing a cardio infraction and/or ischemic stroke and was not released by his primary care physician to return to work. (Tr. 43).

Claimant's mother helps him get dressed, fixes his meals, cleans the house, and does the chores. (Tr. 44). After sitting for more than 15-20 minutes, Claimant allegedly gets pain down his tailbone and eventually his right leg goes numb. (Tr. 45). He estimates he can stand for about fifteen minutes before pain begins in his lower back and travels down to his legs and can walk approximately fifteen steps at a time. (*Id.*). Regarding treatment for his lumbar stenosis, Claimant explains the condition is inoperable, but he uses his sister's pool for physical therapy. (Tr. 46-47). He has been using a cane for several years to provide stability while walking and assist when his legs give out. (Tr. 50-51).

Claimant spends most his day laying flat on his back. (Tr. 48). He started mental health treatment in April of 2018 and is prescribed medication but does not attend counseling or therapy.

(*Id.*). Back pain, depression, and anxiety keep Claimant isolated in his trailer; he only leaves one to two times a month. (Tr. 51). Claimant "enjoy[s] being reclusive." (*Id.*).

ALJ Martin issued an unfavorable decision on October 21, 2019. (Tr. 29-30). ALJ Martin applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since October 10, 2017, his alleged onset date. (Tr. 17). Second, Claimant has the severe impairments of degenerative disc disease, lumbar; headache; anxiety; and depression. (*Id.*). Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 18).

Between the third and fourth steps, ALJ Martin found Claimant has the residual functional capacity to perform light work with the following limitations. Claimant can:

> Lift/carry and push/pull 10 pounds frequently and 20 pounds occasionally; sit 6 hours in an 8-hour workday; and stand/walk 6 hours in an 8-hour workday. Avoid concentrated exposure to work around hazardous machinery, moving parts, vibrations, and work at unprotected heights. Limited to simple routine repetitive tasks and simple work related decisions. Can interact appropriately with supervisors and co-workers. No more than occasional interaction with the general-public. Can adapt to occasional changes in the workplace. Can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day.

(Tr. 19-20). Fourth, Claimant cannot perform any of his past relevant work as a referral and information aid, hotel night auditor, or nurse assistant. (Tr. 28). ALJ Martin found, based on Claimant's age, education, work experience, and residual functional capacity, that jobs exist in significant numbers in the national economy that Claimant can perform. (*Id.*). Based on this analysis, ALJ Martin concluded Claimant was not under a disability, as defined in the Social

Security Act from October 10, 2017, his alleged onset date, through October 21, 2019, the date of decision. (Tr. 29-30).

Claimant administratively appealed ALJ Martin's decision. (Tr. 186-88). The Appeals Council considered Claimant's disagreement with ALJ Martin's decision but declined review because Claimant's arguments did not provide a basis for changing the decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing that they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in

reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant challenges three aspects of ALJ Martin's RFC determination. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed his applications for supplemental security income benefits and disability insurance benefits after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how

they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2).

### A. ALJ Martin's Evaluation of Dr. Qureshi's Opinion

Claimant first argues ALJ Martin ignored Dr. Saadia Quereshi's letter in assessing the opinion evidence of record. (DN 20-1, at PageID # 977-78). On March 16, 2016, Dr. Qureshi wrote a letter on Claimant's behalf to his employer, InspiriTec. (Tr. 329). Dr. Qureshi's letter indicated Claimant's diagnosis of osteomalacia "limits his ability to stand and/or sit for long periods of time; his functional limitations include "work tolerance and difficulty relating to others;" and "his depression and anxiety may cause him to require more training and supervision than most employees." (Tr. 329). Dr. Qureshi further stated Claimant "would benefit from reasonable accommodations that include 15 minute breaks every two hours and an orthopedic desk chair." (*Id.*).

Though recognizing ALJ Martin mentioned Dr. Qureshi's opinion while outlining the evidence, Claimant asserts ALJ Martin never offered any explanation for rejecting the opinion. (*Id.*). Claimant highlights Dr. Qureshi's statements that he would benefit from reasonable accommodations in the workplace, including 15-minute breaks every 2 hours and an orthopedic

6

desk chair. (*Id.* citing (Tr. 329)). ALJ Martin's failure to discuss the supportability or consistency of Dr. Qureshi's opinion, Claimant contends, was reversible error. (*Id.*).

The Commissioner responds that Dr. Qureshi's letter does not qualify as a "medical opinion" under 20 C.F.R. § 404.1513(a)(2)(i) because it does not assess specific work-related limitations. (DN 26, at PageID # 1011). Instead, the Commissioner points out Dr. Qureshi's letter only makes general statements as to Claimant's condition, including several undefined limitations on sitting, standing, difficulty relating to others, and work tolerance. (*Id.*). As for Dr. Qureshi's statements that Claimant would benefit from 15-minute breaks every 2 hours and an orthopedic desk chair, the Commissioner distinguishes these recommendations as "beneficial" to Claimant, rather than required accommodations. (*Id.* at 1011-12).

20 C.F.R. § 404.1513(a)(2) defines the term "medical opinion" for claims filed on or after March 27, 2017 as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature or extremes of fumes.

The Court agrees with the Commissioner that Dr. Qureshi's letter does not seem to qualify as a "medical opinion" under the regulations, as it fails to state what Claimant "can still do despite [his] impairments." *See, e.g., Gabel v. Kijakazi*, No. 1:20-CV-334-DCP, 2022 WL 2349716, at *8-9 (E.D. Tenn. June 29, 2022) (finding physician's letter did not qualify as medical opinion where it failed to reference how plaintiff "may or may not be able to perform the physical demands of any specific work activities"). Rather, Dr. Qureshi's letter speculatively mentions limitations in Claimant's ability to stand/and or sit for long periods and with work tolerance and difficulty relating to others. And the suggestive language Dr. Qureshi utilized in recommending 15-minute work breaks and use of an orthopedic chair does not constitute an opinion on Claimant's ability to perform physical or other demands of work activities. Dr. Qureshi's letter is simply too vague to warrant classification as a medical opinion, which would trigger consideration of consistency and supportability under § 404.1520c.

Dr. Qureshi's letter, instead, constitutes "other medical evidence" under § 404.1513(a)(3). The regulations explain "other medical evidence" includes evidence from a medical source, including "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." While an ALJ should not "outright disregard" this type of evidence, he ultimately "has discretion to determine the proper weight to afford" it. *Gabel*, 2022 WL 2349716, at *9 (quoting *Davis v. Comm'r of Soc. Sec.*, No. 5:19-CV-2929, 2021 WL 2642953, at *5 (N.D. Ohio June 28, 2021) (add'l citation omitted)). ALJ Martin considered Dr. Qureshi's letter when evaluating the medical evidence. (Tr. 22). Though not stated explicitly, ALJ Martin found such evidence inconsistent with other evidence of record. Accordingly, ALJ Martin's evaluation of Dr. Qureshi's letter complies with the applicable regulations.

B. ALJ Martin's Evaluation of Dr. Shea's Opinion

Claimant next submits ALJ Martin erred in evaluating an opinion offered by Dr. Raymond Shea, Claimant's orthopedist. (DN 20-1, at PageID # 979-81). Dr. Shea completed a Medical Source Statement of Claimant's Ability to Do Work-Related Activities on June 21, 2019. (Tr. 818-23). Dr. Shea opined extreme limitations on Claimant's ability to do work-related activities on a regular and continuous basis. For instance, Dr. Shea checked boxes indicating Claimant could never lift or carry up to ten pounds; could sit, stand, and walk 1 hour at a time without interruption; could sit, stand, and walk zero minutes total in an 8-hour work day; could never use his feet to operate foot controls; could never climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl; and could never be exposed to environmental limitations of unprotected heights, moving mechanical parts, operating a motor vehicle, etc.

ALJ Martin "rejected" Dr. Shea's opinion, noting Dr. Shea's limitations on Claimant's ability to sit, stand, or walk did "not make sense" and "[t]he medical record does not support such a severe, drastic residual functional capacity." (Tr. 26-27). ALJ Martin also referenced Claimant's MRI from June 2018 showing "only mild to moderate changes with slight displacement on nerve root, not a compression." (Tr. 27). He further highlighted the discrepancy in Dr. Shea limiting Claimant to never operating foot controls while also noting Claimant had a valid driver's license and drove to the evaluation. (*Id.*).

Claimant asserts ALJ Martin improperly rejected Dr. Shea's opinion. (DN 20-1, at PageID # 979-81). Claimant emphasizes Dr. Shea's opinion is highly consistent with the record evidence, including Dr. Qureshi's opinion, Dr. Uddin's examination notes from 2016 to 2018, and Dr. Uddin's conclusions Claimant should remain off work indefinitely and is incapable of engaging in gainful employment. (*Id.* at PageID # 980-81). If ALJ Martin was confused by Dr. Shea's opined

9

sitting, standing, and walking limitations, Claimant asserts he had the option to recontact Dr. Shea. (*Id.*).

The Commissioner contends ALJ Martin's decision to reject Dr. Shea's opinion was supported by substantial evidence in the record. Claimant's pointing to evidence that may have supported another conclusion, the Commissioner explains, does not demonstrate cause for reversal. The Commissioner asserts ALJ Martin was not required to recontact Dr. Shea because his decision provides other reasons for discrediting the opinion beyond the confusion on Claimant's sitting, standing, and walking limitations. (DN 26, at PageID # 1005-6). One such basis, unchallenged by Claimant, is the inconsistency within Dr. Shea's opinion regarding Claimant's ability to use his feet. The Commissioner emphasizes Dr. Shea's check-box opinion does not provide any support for his extreme limitations, making it unlikely any ALJ would have found the opinion persuasive. (*Id.* at PageID # 1010).

Again, under § 404.1520c, ALJ Martin was required to assess the supportability and consistency of Dr. Shea's medical opinion. The Court finds he did so. ALJ Martin considered the consistency of Dr. Shea's opinion with the record as a whole. One glaring inconsistency ALJ Martin emphasized was Dr. Shea opining Claimant could never operate foot controls when other portions of the record, including Claimant's examination with Dr. Greg Lynch, indicated Claimant had a valid driver's license and drives himself and his mother. (Tr. 27 (citing Tr. 532)).

ALJ Martin also broadly indicated the medical record did not support Dr. Shea's "severe, drastic residual functional capacity." (Tr. 27). Support for ALJ Martin's conclusion is found throughout his RFC determination. *See, Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision). ALJ Martin spent eight pages analyzing Claimant's RFC. In doing so, he thoroughly considered

Claimant's subjective allegations, Claimant's hearing testimony, treatment records, and diagnostic findings. ALJ Martin specifically discussed treatment records and diagnostic testing revealing unremarkable levels of impairments. For instance, ALJ Martin discussed Dr. Shea's findings on physical exam that Claimant could not walk any long distance, that the physical musculature in his lower extremities were still strong, that there was no fluid in his knee, and that he had no osteoarthritis of the hips. (Tr. 24). Similarly in rejecting Dr. Shea's opinion, ALJ Martin referenced Claimant's June MRI showing "only mild to moderate changes with slight displacement on nerve root, not a compression." (Tr. 27). ALJ Martin had previously discussed the MRI findings in depth.

Claimant pitches Dr. Shea's opinion was consistent with Dr. Uddin's conclusions Claimant should remain off work indefinitely and is incapable of engaging in gainful employment. While Claimant is correct that Dr. Shea's extreme limitations bolster Dr. Uddin's conclusions, Dr. Uddin's statements of total disability are not the type of record evidence ALJ Martin was required to consider. "[T]he ultimate issue of disability is reserved to the Commissioner." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 820-21 (E.D. Mich. 2013) (quoting *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008)). ALJs may appropriately disregard portions of opinions or other evidence delving into issues concerning the finding of disability. *Id.; see also Gabel*, 2022 WL 2349716, at *6. Dr. Uddin's statements, accordingly, cannot constitute support for Dr. Shea's extreme limitations.

The other record evidence Claimant cites as allegedly supporting Dr. Shea's opinion does not automatically render ALJ Martin's rejection of Dr. Shea's opinion unsupported. Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). Review of ALJ Martin's whole RFC determination

reveals he considered the totality of the record evidence, including evidence favorable and unfavorable to a finding of disability.

Lastly, the Court agrees with the Commissioner that ALJ Martin need not have recontacted Dr. Shea to resolve confusion over his opined sitting, standing, and walking limitations. First, setting aside the obvious contradiction in Dr. Shea finding Claimant could sit, walk, and stand 1 hour at a time without interruption and finding Claimant could sit, stand, and walk zero minutes total in an 8-hour workday, neither limitation considered alone is supported by or consistent with the medical record. ALJ Martin's very next sentence, indicating "[t]he medical record does not support such a severe, drastic residual functional capacity," demonstrates his review of these limitations against the medical record. And as detailed above, ALJ Martin provided several bases pursuant to the regulations for rejecting Dr. Shea's opinion; he did not rely solely on confusion relating to Dr. Shea's sitting/walking/standing limitations.

For these reasons, ALJ Martin's evaluation of Dr. Shea's opinion is supported by substantial evidence in the record and complies with the requirements of § 404.1520c.

### C. ALJ Martin's Analysis of Claimant's Mental RFC

Lastly, Claimant argues ALJ Martin's mental RFC determination is not supported by substantial evidence because although he found Dr. Greg Lynch's consultative examination findings to be persuasive, ALJ Martin did not fully incorporate Dr. Lynch's observations. In analyzing Claimant's mental RFC, ALJ Martin discussed the State Agency Psychologists' mental evaluations and Dr. Lynch's consultative examination. Dr. Greg Lynch performed a one-time consultative examination of Claimant on December 18, 2017. (Tr. 532). After his examination, Dr. Lynch concluded Claimant was slightly limited in his capacity to understand, remember, and carry out instructions towards performance of simple, repetitive tasks; moderately limited in his ability

to tolerate stress and pressure of day-to-day employment; and moderately limited in his capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting. (Tr. 536). Dr. Lynch noted Claimant did not seem limited in his capacity to sustain attention and concentration towards performance of simple repetitive tasks. (*Id.*). The State Agency Psychologists offered very similar restrictions to Dr. Lynch, finding Claimant could understand, remember, and carry out simple and routine duties that did not require a great deal of independent judgment; could maintain concentration and attention for 2-hour segments; could interact appropriately to supervisors and coworkers and occasionally with the public; and could adapt to routine changes. (Tr. 27 (citing Exs 1A, 2A, 7A, 8A)).

ALJ Martin found the opinions of Dr. Lynch and of the State Agency Psychologists to be "persuasive" because they were consistent with the medical record. (Tr. 27). Ultimately, ALJ Martin limited Claimant to "simple routine repetitive tasks and simple work related decisions" and "no more than occasional interaction with the general-public." (Tr. 19). ALJ Martin found Claimant could "interact appropriately with supervisors and co-workers;" "adapt to occasional changes in the workplace;" and "maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day." (Tr. 19-20).

Claimant asserts ALJ Martin's mental RFC determination is not supported by substantial evidence in the record because he failed to reconcile his findings with Dr. Lynch's opinion. (DN 20-1). Despite ALJ Martin favorably analyzing Dr. Lynch's opinion, Claimant reasons he did not account for Dr. Lynch's opinion that Claimant has "moderate limitations responding appropriately to co-workers and supervisors" and "moderate limitations in day-to-day employment and ability to tolerate stress." (*Id.* at PageID # 982 (quoting Tr. 19)). To support ALJ Martin's RFC determination failing to account for Dr. Lynch's limitations, Claimant cites Dr. Uddin's treatment

13

records, Dr. Uddin's statements as to disability, Dr. Lynch's exam notes, and Dr. Ahmad's treatment notes. (*Id.* at PageID # 983-84).

The Commissioner argues ALJ Martin properly incorporated Dr. Lynch's restrictions into Claimant's RFC. (DN 26, at PageID # 1013-14). The highly trained State Agency Psychologists, the Commissioner notes, also considered Dr. Lynch's moderate restrictions, found them highly persuasive, and assessed specific limitations. (*Id.* at PageID # 1014). Regardless, the Commissioner maintains ALJ Martin was not required to adopt Dr. Lynch's opinion verbatim in finding it persuasive. (*Id.* at PageID # 1015).

The Commissioner is correct that ALJs are not required to "adopt opinions [they] find persuasive 'verbatim[.]'" *Covell v. Comm'r of Soc. Sec.*, No. 5:21-CV-01296-JG, 2022 WL 1432038, at * 7 (N.D. Ohio, Apr. 25, 2022) (citing *Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *13 (N.D. Ohio Feb. 3, 2020)). But if the ALJ's RFC determination conflicts with a medical opinion found to be persuasive, the ALJ must explain why he did not adopt the conflicting portion. *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022); *see also Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2019 WL 6695821, at *4 (S.D. Ohio Dec. 9, 2019) (citations omitted) (an ALJ must still "explain why he failed to include articulated limitations where he has found that the RFC is consistent with the medical opinion.")). To prove error under such circumstances, Claimant must demonstrate ALJ Martin's RFC determination conflicted with Dr. Lynch's opinion and ALJ Martin failed to explain the contradiction. *Id.*

Upon review, ALJ Martin evidently considered Dr. Lynch's opinion when crafting Claimant's mental RFC. ALJ Martin incorporated Dr. Lynch's moderate limitation as to Claimant's ability to tolerate stress and pressure of day-to-day employment by limiting Claimant

14

to "simple routine repetitive tasks and simple work related decisions," to "occasional workplace changes," and to "no more than occasional interaction with the general-public." (Tr. 19). *See, e.g., Bryson,* 2022 WL 945318, at *3. Because ALJ Martin's limitations adequately account for and do not conflict with Dr. Lynch's moderate limitation in tolerating stress and pressure of day-to-day employment, no further explanation from ALJ Martin was required.

ALJ Martin's consideration of Dr. Lynch's moderately limiting Claimant's ability to respond appropriately to supervision and coworkers requires slightly more analysis. On its face, it appears Dr. Lynch's moderate limitation conflicts with ALJ Martin's conclusion that Claimant could "interact appropriately with supervisors and co-workers." And ALJ Martin does not appear to offer any explanation for this conflict. On closer inspection, however, ALJ Martin together found the State Agency Psychologists' evaluation and Dr. Lynch's opinion were persuasive and consistent with the record. ALJ Martin's finding that Claimant could interact appropriately with supervisors and coworkers comes from the State Agency Psychologists' evaluations, who had previously reviewed Dr. Lynch's opinion. Point being, ALJ Martin did not pull this limitation, or lack thereof, out of thin air. In this context, the Court finds any error from ALJ Martin failing to explicitly state why he did not adopt Dr. Lynch's moderate limitation in responding appropriately to supervisors was harmless because there is a clear and supported basis for ALJ Martin's finding in the record. *See, e.g., Bryson*, 2022 WL 945318, at *6 (applying harmless error analysis to ALJ's potential error in not explaining his failure to adopt a medical opinion's findings verbatim).

As for Claimant's assertions that other evidence in the record supports Dr. Lynch's limitations that ALJ Martin allegedly failed to account for, the Court is again unconvinced. Once more, Claimant simply pointing to other evidence in the record that may support a decision the other way does not necessarily warrant relief. ALJ Martin's RFC analysis thoroughly discussed

Claimant's history of mental impairment. (Tr. 24-25). Critically, ALJ Martin discussed evidence, including Claimant's subjective reports, Claimant's mother's statements, and treatment notes, both favorable and unfavorable to Claimant's disability allegations. ALJ Martin highlighted that in February of 2018, three months after Dr. Lynch's examination, Claimant presented as stable, with his chronic generalized anxiety well managed on his current medications. (*Id.*). He further discussed records from June of 2018, where Claimant presented with worsening anxiety, including restlessness, racing thoughts, worrying, and his medications were adjusted. (*Id.* (citing Ex. 18F)). In July and September of 2018, Claimant reported improvement in anger on Risperdal, functioning fairly well with stable mood, and feeling calm and relaxed. (*Id.* (citing Ex 18F; 23F)). And though records from 2019 indicated Claimant's high stress and isolation, with panic attacks almost daily and hand tremors, he presented as cooperative and attentive with no gross behavior abnormalities. (*Id.* (citing Ex. 23F)). By detailing Claimant's mental health records, ALJ Martin clearly considered this evidence in finding the State Agency Psychologist's evaluations and Dr. Lynch's opinion persuasive. ALJ Martin's mental RFC determination is supported by substantial evidence in the record and complies with the applicable regulations.

### III. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

August 1, 2022

Regina S. Edwards, Magistrate Judge
United States District Court

Copies:    Counsel of Record

16